NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 11-2123
_____

CHARLES LESCOE,

Appellant

v.

PENNSYLVANIA DEPARTMENT
OF CORRECTIONS – SCI FRACKVILLE

_____

On Appeal from the United States District Court
For the Middle District of Pennsylvania
(D.C. No. 4:09-cv-00839)
District Judge:  Honorable John E. Jones III

_____

Submitted Under Third Circuit LAR 34.1(a)
December 13, 2011

Before: SLOVITER, VANASKIE, *Circuit Judges*
and STENGEL,[*] *District Judge*

(Filed: February 16, 2012)
_____

OPINION
_____

_____

[*] Hon. Lawrence F. Stengel, United States District Court for the Eastern District of
Pennsylvania, sitting by designation.

STENGEL, *District Judge*.

Charles Lescoe ("Lescoe") is appealing this case from a Memorandum and Order adopting the Report and Recommendation from Magistrate Judge Mannion granting summary judgment to the Department of Corrections – SCI Frackville ("DOC") for his claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 10221 et seq.[1]

**I.**

Because we write primarily for the parties, our recitation of the facts and procedural history is brief. The facts of this case involve a detailed history of Appellant's employment with the DOC beginning in March 2006 when Appellant became a Corrections Officer Trainee ("COT") and ending on August 26, 2006 when he resigned. At the time of his employment and resignation, Appellant weighed approximately 300 pounds and was 5' 7" tall.

To obtain employment at the DOC, Appellant passed a number of medical and physical tests. He also participated in a five week long training academy operated by the DOC, which instructed COTs about the policies and procedures for working at a DOC facility. These policies and procedures included training on discrimination.[2] The

---

[1] The District Court had jurisdiction under 42 U.S.C. § 12133, 29 U.S.C. § 784a, and 42 U.S.C. § 2000e-(f). We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review of the District Court's grant of summary judgment, and we apply the same standard applicable in the District Court found in Fed. R. Civ. P. 56. *See Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008).

[2] During the relevant period, the DOC had Policy Number 1.6.1 – Equal Employment Opportunity which established guidelines and procedures for nondiscrimination of all employees and a complaint process for employees who felt they were being discriminated against.

plaintiff began working as a full-time COT in March 2006. Although Appellant's first performance evaluation was satisfactory, he received an overall rating of "needs improvement" for May and June and an unsatisfactory rating for the month of July. The record shows that Mr. Lescoe received numerous "fact-findings," or disciplinary write-ups, for failing to perform his duties in accordance with established procedures. [3]

Appellant testified in his deposition that, due to his obesity, he has mild lower back and foot pain and was discriminated against by his employer. He stated that he did not require any assistance or special exceptions due to his weight because he was permitted to sit. Later, he was told that trainees were not permitted to use the chairs. Appellant alleges that during his employment at SCI-Frackville, he was the subject of jokes and comments about his weight, the size of his belly, and not being able to see his groin area. Appellant testified that he tried reporting the harassment to his supervisor, but he was told to try and work things out on his own. [4] Appellant testified he experienced anxiety and emotional distress due to his work environment but never sought any treatment. After leaving the DOC, the plaintiff saw a doctor for problems related to his weight and his medical records state that he is morbidly obese.

---

[3] Lescoe was written up for allowing the inmates to call out "f*** you" in response to roll call. Additionally, Lescoe was written up for an incident on June 14, 2006, when he left the prison wing to remove excess toilet paper and left a number of the cell doors open. Right before his resignation, Lescoe was also written up for raising his fist and stating "white power" while on the block.

[4] Appellant also reported incidents to another supervisor, but he testified that he made other complaints to fellow training officers and officers who were not in his direct line of command.

**II.**

Lescoe claims that the District Court erred by finding that he was not disabled within the meaning of the ADA due to his morbid obesity, that he was required to perform all of the functions of the job, and that the DOC did not need to offer a reasonable accommodation. We disagree.

To establish a prima facie case of discrimination under the ADA a plaintiff must demonstrate: (1) he is a disabled person within the meaning of the ADA[5]; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination."[6] G*aul v. Lucent Technologies, Incorporated*, 134 F.3d 576, 580 (3d Cir. 1998). A party alleging disparate treatment bears the burden of proof. *McDonnell-Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973).

Lescoe contends that due to his obesity, his lower back and feet become painful after standing for long periods, his employer saw him as disabled, and he was discriminated against and faced great hostility from fellow co-workers. As the District

---

[5] An individual is *substantially* limited in a major life activity when he is "unable to perform a major life activity that the average person in the general population can perform" or is "significantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Walton v. Mental Health Ass'n*, 168 F.3d 661, 665 (3d Cir. Pa. 1999) (interpreting the meaning of "substantially limited in a major life activity" in the ADA with language from 29 C.F.R. § 1630.2(j)).

[6] The same legal standard in determining a disability under the ADA applies to the PHRA. *See Colwell v. Rite Aid Corp.*, 602 F.3d 495, 499 n.3 (3d Cir. 2010).

4

Court appropriately reasoned, Appellant failed to establish by a preponderance of the evidence a prima facie case that he was a qualified individual with a disability under the ADA. Although this Court has not definitively reached a position regarding whether obesity is a disability under the ADA that limits a major life activity, the District Court did not err in finding that Lescoe did not establish any major life activities that were adversely affected by his weight. He passed numerous medical and physical exams to obtain the position as well as a five-week training program. Moreover, Appellant "must further show that the limitation on the major life activity is substantial." *Toyota Motor Mfg., Ky. v. Williams*, 122 S. Ct. 681, 690 (2002) (quoting 42 U.S.C. §12102(2)(A)). Appellant has also failed to allege that his weight is the result of a physiological disorder, which is imperative in some circuits. *See Francis v. City of Meriden*, 129 F.3d 281, 286 (2d Cir.1997) (citing *Andrews v. State of Ohio*, 104 F.3d 803 (6th Cir.1997)). Accordingly, the District Court properly found that Lescoe has not established that he was disabled under the ADA.

Lescoe also argues that the District Court erred by finding that he was not perceived as having a disability. Specifically, Lescoe contends that this perception is evidenced by the fact that he was harassed about his weight and by the defendant's refusal to transfer him to another position, allowing him to sit in a chair, or reduce his work day. We disagree.

To determine if an individual is "regarded" as having a disability under the ADA, the individual must either (1) have a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting

5

such limitation; (2) have a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) have no such impairment but is treated by a covered entity as having a substantially limiting impairment.  *See Eshelman v. Agere Sys.*, 554 F.3d 426, 434 (3d Cir. 2009); *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 187 (3d Cir. 1999).

Our Circuit has not yet recognized a cause of action against an employer who discriminates against an employee because it perceives the employee as disabled by obesity.[7]  Nor need we do so now because Lescoe has not established a prima facie case that the DOC discriminated against him because it perceived him as disabled by some impairment that substantially limits one of his major life activities.  There is no indication that the DOC perceived Lescoe's obesity as limiting any major life activities nor is there any evidence that the Appellee treated Lescoe differently from any other employee.  Appellant met all of the physical requirements to become a COT.  Additionally, due to

---

[7] Pennsylvania state courts have ruled on the issue of morbid obesity.  *See e.g., Philadelphia Electric Co. v. Pennsylvania Human Relations Commission*, 448 A.2d 701 (Pa. Commw. 1982) (Morbid obesity may be a handicap or disability within the meaning of the PHRA, but the condition of morbid obesity, alone, is not such a handicap or disability).  Other courts have also held that morbid obesity, which is not caused by a physiological condition, is not a disability under the ADA.  *See Greenburg v. Bellsouth Telecommunications, Inc.*, 498 F.3d 1258, 1264 (11th Cir. 2007); *Equal Employment Opportunity Commission v. Watkins Motor Lines, Inc.*, 463 F.3d 436 (6th Cir. 2007); *Frances v. City of Meriden*, 129 F.3d 281 (2nd Cir. 1997).  *But see, Cook v. Rhode Island Dep't of Mental Health, Retardation, and Hospitals*, 10 F.3d 17 (1st Cir. 1993) (upholding jury verdict for plaintiff claiming under the Rehabilitation Act that she was discriminated against because of her morbid obesity); *Motto v. City of Union City*, 1997 U.S. Dist. LEXIS 23401 (D.N.J. Aug. 26, 1997) (recognizing that morbid obesity can substantially limit one or more life activity and that the "New Jersey Appellate Division has already ruled that actual or perceived morbid obesity is a protected disability under the NJLAD").

Lescoe's numerous disciplinary actions, Appellee's actions do not indicate that it perceived Lescoe to be disabled. As the District Court appropriately reasoned, Lescoe "fails to highlight any evidence supporting [the DOC's] alleged belief that [Lescoe] was somehow disabled because of his weight." Therefore, the District Court did not err in finding that Appellant failed to establish disability under the definitions set forth above.

Finally, Lescoe contends that the District Court erred by granting summary judgment in favor of the DOC as to his hostile work environment claim due to the alleged incidents of harassment from other correctional officers concerning Appellant's obesity. We disagree.

The standard of liability for a hostile work environment claim adopted by our Court is what has become known as a "totality of the circumstances" approach.[8] *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 753 (3d Cir. 1995). There are five elements necessary to establish a successful hostile work environment claim: (1) the plaintiff suffered intentional discrimination because of his membership in the protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would have detrimentally affected a reasonable person under the same circumstance; and, (5) the existence of respondeat superior liability. *See Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999).

---

[8] Circumstances include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. West v. Philadelphia Elec. Co., 45 F.3d 744, 753 (3d Cir. 1995) (citing Harris v. Forklift Sys., 114 S. Ct. 367, 371 (1993)).

Appellant argues that the alleged harassment constituted a hostile work environment which detrimentally affected his employment. As the District Court appropriately reasoned, Appellant has failed to establish that he has a disability under the ADA. Furthermore, the incidents of harassment did not reach a level of sufficient severity or pervasiveness to alter the conditions of Lescoe's employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). Therefore, we find that the District Court properly granted the summary judgment motion in favor of the DOC.

## III.

For the foregoing reasons, we will affirm the District Court's entry of summary judgment in all respects.